UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )  No. 17-CR-301
                               )
vs.                            )  SENTENCING
                               )
BRYAN CONNOR HERRELL,          )
                               )
          Defendant.           )
_____)

Fresno, California                    Tuesday, September 1, 2020


REPORTER'S TRANSCRIPT OF PROCEEDINGS


**APPEARANCES OF COUNSEL**:


For the Plaintiff:      United States Attorney's Office
                        BY: **PAUL HEMESATH**
                        and **GRANT RABENN**
                        501 I Street
                        Suite 10-100
                        Sacramento, California 95814

                        U.S. Department of Justice
                        BY:  **LOUISA K. MARION**
                        1301 New York Avenue, NW
                        Washington, DC 20530

For the Defendant:      **JEFFREY HAMMERSCHMIDT**
                        Attorney at Law
                        2445 Capitol Street
                        Suite 150
                        Fresno, California 93721

REPORTED BY:  KAREN HOOVEN, RMR, CRR, Official Court Reporter
Proceedings recorded by mechanical stenography, transcript
produced by computer aided transcription.

1   Tuesday, September 1, 2020                    Fresno, California

2   9:33 a.m.

3          THE CLERK:  Court calls next case 1:17-CR-301.

4   United States versus Bryan Connor Herrell.  Sentencing.

5          THE COURT:  And please state your appearances for the

6   record, beginning with counsel for the government.

7          MR. HEMESATH:  Good morning, Your Honor, Paul

8   Hemesath and Louisa Marion and Grant Rabenn on behalf of the

9   United States.

10          MR. HAMMERSCHMIDT:  Good morning, Your Honor, Jeff

11  Hammerschmidt on behalf of Bryan Herrell, appearing via zoom.

12  Mr. Herrell is appearing from his home in Colorado.

13          THE COURT:  And is Mr. Rabenn with us?  Or is he just

14  going to remain in the muted with the black screen and his

15  name?

16          MR. RABENN:  Your Honor, I am here, but I assumed Mr.

17  Hemesath's visual appearance was sufficient for the

18  government.  But I'm certainly --

19          THE COURT:  It is, Mr. Rabenn.  I just didn't want to

20  start if you hadn't joined us but were intending to.

21          MR. RABENN:  Thank you, Your Honor.  I appreciate it.

22          THE COURT:  And the matter is on calendar for

23  imposition of judgment and sentence.  We also have Ms.

24  Valdivia from probation with us.  Ms. Pascual authored the

25  presentence report, but is unable to join us today.

1        And Mr. Hammerschmidt, does Mr. Herrell wish to waive

2    any right that he has to a live appearance before the Court

3    for purposes of sentencing?  And does he agree to proceed with

4    sentencing today by way of this video appearance, with all of

5    us appearing remotely from our various locations?

6        MR. HAMMERSCHMIDT:  Yes, he agrees to that process.

7        THE COURT:  And Mr. Herrell, is that what you wish to

8    could, proceed to sentencing by way of this video hearing

9    today and waive any right that you may have to a live

10   sentencing hearing before the Court?

11       THE DEFENDANT:  Yes, it is, Your Honor.

12       THE COURT:  I find that a national state of emergency

13   has been declared in response to the spread of the

14   Coronavirus.  For everyone's health and safety, the general

15   population of California is under a gubernatorial order to

16   shelter in place.  The detention facilities have imposed

17   quarantines or restrictions on access to detainees for the

18   health of the detainees and staff.  The Judicial Conference of

19   the United States has found that conditions due to the

20   national emergency are materially affecting the functioning of

21   the federal courts.  And the Judicial Council of the Ninth

22   Circuit has certified that emergency conditions existing in

23   the Eastern District of California justify the temporary

24   suspension of the 70-day period to bring defendants to trial.

25   Public health recommendations and restrictions have impacted

4

1   this Court's ability to function as it usually does to conduct

2   in person proceedings and has impaired the availability of

3   counsel, the parties and court staff to be present in the

4   courtroom.

5          I therefore find, pursuant to the CARES Act, that the

6   use of video conferencing to conduct these sentencing

7   proceedings with the consent of the defendant Bryan Connor

8   Herrell is in the interest of justice in that utilization of

9   such a procedure may prevent the defendant from remaining

10  incarcerated longer than is necessary and will satisfy the

11  objectives of sentencing under the US Sentencing Guidelines

12  and 18 USC Section 3553.

13         And the Court has received, with respect to

14  sentencing, the presentence report filed July 27th.  The

15  government's motion, the defense sentencing memorandum filed

16  August 25th as well as all of the attachments to that

17  motion -- or to that sentencing memorandum.  There are also

18  attachments, some, to the presentence report itself.  I've

19  reviewed all of those.  Is there anything else I should have

20  received in connection with sentencing?

21         MR. HAMMERSCHMIDT:  No, Your Honor.

22         MR. HEMESATH:  No, Your Honor.  Thank you.

23         THE COURT:  And Mr. Hammerschmidt, have you had the

24  opportunity to review the presentence report in Mr. Herrell's

25  case and to discuss it with him fully?

1          MR. HAMMERSCHMIDT:  Yes, I have.

2          THE COURT:  And Mr. Herrell, have you had the

3    opportunity to review the presentence report in your case and

4    to discuss it in detail with your attorney?

5          THE DEFENDANT:  Yes, I have, Your Honor.

6          THE COURT:  Okay.  There are no objections to the

7    presentence report, though I do note that the plea

8    agreement -- oh, that's right, it was the criminal history

9    score.  The parties in their plea agreement anticipated a

10   criminal history category of II.  It turns out probation has

11   calculated the criminal history category as III.  But there is

12   no objection to the propriety of the criminal history category

13   three determination by probation; correct, Mr. Hammerschmidt?

14         MR. HAMMERSCHMIDT:  Yes, I believe probation

15   calculated it correctly.

16         THE COURT:  All right.  So there being no objections

17   to the presentence report, I adopt the findings of that

18   report, determine them to be true and correct.  I therefore

19   find that the applicable offense level here is 37.  That Mr.

20   Herrell's criminal history places him in category Roman

21   numeral III resulting in an advisory guideline range, which

22   would be -- I emphasize would be -- 262 to 327 months.  But

23   because the statutory maximum for the charge to which Mr.

24   Herrell pled to is 240 months, that becomes the guideline

25   range.  An advisory guideline range calling for a term of

1 imprisonment of 240 months.

2        The sentencing guidelines, however, are only the

3 beginning point in the sentencing process.  Ultimately the

4 Court is to impose a sentence that is reasonable as has been

5 described by the Supreme Court in its decisions in *Booker* and

6 *Fanfan*.  Therefore, in addition to the guidelines, the Court

7 will give due weight to the statutory factors set forth at 18

8 USC Section 3553(a).  I note that probation has recommended a

9 downward variance under 3553 from 240 months down to 216

10 months, a 24 month downward variance.

11        In addition, I would indicate that I do plan on

12 granting the government's motion.  And before I turn to

13 counsel for any comments or further argument regarding

14 sentencing, it would appear to me that if I grant the

15 government's motion -- well, let -- having granted that

16 motion, the question really is a fairly limited one, it seems

17 to me.  But Mr. Hammerschmidt, I'm probably most interested in

18 your exact sentencing guideline -- or your exact sentencing

19 recommendation, assuming that the Court is granting the

20 government's motion.

21        MR. HAMMERSCHMIDT:  My request would be on Mr.

22 Herrell's behalf, that the reduction be based off of the 216

23 months rather than the 240 months.  That is obviously a

24 significant amount of time for someone as youthful as Mr.

25 Herrell, who has never been previously incarcerated.  He's had

1 approximately two and a half years that he spent in custody

2 before being released to his home.  He was age 19 when the

3 crime started.  They were significant, as noted in the plea

4 agreement, and they were continuing throughout that time.  So

5 I don't wish to minimize at all Mr. Herrell's conduct, because

6 it did go on pretty much on a daily basis from age 19 to 22.

7        But the government's motion details how Mr. Herrell

8 reacted to -- once he was arrested, how he handled himself and

9 how he's handled himself sense.  And even if -- I know the

10 Court read the detailed letter from Mr. and Mrs. Herrell, his

11 parents, and his letter.  Both were written without any input

12 whatsoever.  I wanted them to be genuine to the Court.  And if

13 it is off of the 18 years rather than the 20 years, it is

14 still a very, very significant amount of time, for a person

15 who's never spent time in custody, to spend.  And I think it

16 would be sufficient, a sufficient sentence to hold him

17 accountable for the obviously serious and lengthy criminal

18 conduct in this case.

19        THE COURT:  And so just so that I know what your

20 calculation is, is it -- are you requesting a 129 or 130 month

21 sentence?

22        MR. HAMMERSCHMIDT:  I think it comes out to 129.6, so

23 I suppose 129 would be what I'd be requesting.

24        THE COURT:  All right.  Anything else that you wish

25 to add with respect to sentencing?  And I have read Mr.

1   Herrell's parents' letter.  I actually read it twice because
2   it was lengthy.  You know, the conduct here -- the criminal
3   conduct here is extremely serious.  And Mr. Herrell recognizes
4   that to some -- I mean, his parents do as well.  I say this
5   often.  Sometimes people who are very good do very bad things.
6   Doesn't make every aspect of their life bad certainly.
7          Mr. Bryan Herrell has done a lot of good things,
8   particularly with respect to his brother and with the rest of
9   his family.  I'm sure everybody in the Herrell family,
10  including probably nobody more than Mr. Bryan Herrell, would
11  like to turn the clock back and make this all go away.  Can't
12  possibly be true.  Right?  How did this end up happening?  But
13  it did.  And the seriousness of it.
14         I mean, I take to heart what Mr. and Mrs. Herrell
15  have urged, as any parent would, the Court to do.  I hope they
16  understand that I have seriously considered what they had to
17  say and I understand every word of why they would say it.  And
18  I understand all the pain that must be accompanying all of
19  this for their entire family.  But the seriousness of the
20  offense has to be taken into account.  Anyway, I just -- I
21  want them to know -- and I'm sure they're on the public
22  line -- that I did fully consider everything they had to say.
23         MR. HAMMERSCHMIDT:  Yes, they are on the public line.
24         THE COURT:  Mr. Hammerschmidt, is there anything you
25  want to add with respect to sentencing?

1          MR. HAMMERSCHMIDT:  Not at this time.

2          THE COURT:  All right.  Mr. Hemesath, anything that

3     the government wishes to add with respect to sentencing?

4          MR. HEMESATH:  Well, Your Honor, I think it's

5     acknowledged that we're not that far apart in terms of our

6     recommendations.  Really what it comes down to is that last --

7     however one would want to characterize it, that last ten

8     percent of the 3553 argument that is based, as far as I can

9     interpret from that PSR, on the history and characteristics of

10    Mr. Herrell.

11         It is there where the government objects to that

12    downward variance suggestion, acknowledging -- you know, to

13    echo Your Honor that he came from a great family that

14    supported him and continues to support him.  And that is

15    acknowledged.

16         And the problem, in the government's view, with

17    crediting anything with regard to his history and

18    characteristics is that, if anything, it goes in the other

19    direction.  Although he's portrayed as this, you know, kind of

20    shy naive person in the real world, on the Darkweb he was

21    precisely the opposite of that.  And this was proven not just

22    once, not tens of times, but I would argue hundreds of times.

23    Not only with regard to his public outward persona, but in his

24    direct chats with two FBI agents during the operation, one of

25    which he did not realize was an FBI agent.  The other that he

1  knew was an FBI agent and operating behind this cloak of

2  anonymity that is the Darkweb, he felt like he could truly

3  express himself about all his feelings and so forth.

4       And his feelings and these communications show an

5  extreme self-awareness of exactly what he was doing and why he

6  was doing it.  And it showed that he weighed all of the

7  possibilities, including the possibility of getting caught.

8  And it was those feelings and those sentiments that led him to

9  get deeper and deeper into this world.

10      The government's not emphasizing some of the more

11 unseemly things that he said, but really concentrating on

12 those elements of his communications that showed that he

13 really knew what he was doing, he knew what he was doing for

14 the long term.  You know, I'll just quote one thing that he

15 tells the FBI agent, that the relationship between crime and

16 prison is fading away on the Darknet.  And my interpretation

17 of that is that he believes -- and he believes that the world

18 believes as well -- that you must can't get caught.  And

19 therefore, it is a world of impunity and it is a lawless

20 world, where people can say and do whatever they want.  And

21 it's not just talk.

22      The 468 disputes, just involving Fentanyl, that he

23 moderated -- and that is just a small sliver of the total

24 amount of Fentanyl transactions that occurred on this

25 particular site.  And he's on the hook for all of them under

1   the statute.  But it is that length of time.  Granted he

2   started at 19, he ended up more like at the age of 23.  And

3   throughout that entire time, he had very considered and

4   knowledgeable judgment about precisely what was going on.

5        And it is for that reason why the government simply

6   can't get behind even whatever the equivalent is, a ten

7   percent reduction on 3553 factors.  He did a very good job

8   with regard to the basis for which the government is

9   requesting its downward departure.  And I think that that's

10  fair, but we think that is not a proportional view of what the

11  conduct is here and what the history and characteristics are.

12       THE COURT:  Submitted?

13       MR. HEMESATH:  Submitted, Your Honor.

14       THE COURT:  Mr. Hammerschmidt, anything in reply

15  before I turn to Mr. Herrell?

16       MR. HAMMERSCHMIDT:  Just, Your Honor, that I

17  think -- I understand the government's argument.  The fact

18  that Mr. Herrell could act in a way online that he couldn't

19  act in person is not inconsistent with, I think, the diagnosis

20  that -- the mental health issues he has.

21       And while he may have some mental health issues, it's

22  clear that Mr. Herrell is a very intelligent man.  I know the

23  Court saw Mr. Herrell's letter, it needed no spelling

24  corrections, no grammatical corrections.  It was very well

25  written.  He's clearly an intelligent man.  But I do think the

1   fact that he could act in a way online that was completely

2   inconsistent with the way he could act in person is not

3   inconsistent with the mental health issue.  And I believe Mr.

4   Herrell would like to address the Court.

5          THE COURT:  Let me just say.  I think the

6   government's position with respect to that is really, judge,

7   there is no diagnosis.  So really that's speculation.  And

8   they've got a very strong point there, in my view.  Do I

9   suspect that there are other things at play?  Yes, I do.  But

10  have they been established?  Not in my view.  The conduct,

11  incredibly serious.  I mean, the Darkweb -- I mean the

12  seriousness of the unlawful conduct that Mr. Herrell was

13  facilitating, you know, for hundreds and hundreds of

14  transactions, is just staggering and it is incredibly damaging

15  and dangerous.  So all those things are true.

16          I think it's the government's position -- Mr.

17  Hemesath can correct me if he thinks that I missed the

18  point -- is, judge, we've taken all that into account in what

19  we've recommended here.  And that's how we've gotten to this

20  point of recommending the 141 month sentence that we're

21  recommending.  And really, that's the very much -- that's the

22  most that Mr. Herrell should be entitled to.  That is a huge

23  break from what he otherwise was looking at as a result of his

24  criminal conduct.  Do I basically have the government's point,

25  Mr. Hemesath?

1      MR. HEMESATH:  Yes, Your Honor.  That's absolutely

2   correct.  The Court can imagine different scenarios.  And I

3   think even the PSR points that out.  That there -- there are

4   different ways of calculating this.  And the government made a

5   deal.  It's going to stick to that deal, even so much as to

6   arguably we should be subtracting that downward departure from

7   what probation found.  We're going to stick to our guns with

8   regard to the estimate, which is lower than that.  And so it

9   is only this additional 3553 factor that we're taking issue

10  with because it simply, in the government's view, is not

11  supported by the record.

12      THE COURT:  And Mr. Herrell, is there anything you

13  wish to say to me before I impose sentence in your case?

14      THE DEFENDANT:  Yes, there is, Your Honor.  I would

15  just like to say that thank you for releasing me a couple of

16  months ago.  It's been an absolute blessing to be home at this

17  time.  And I mean, I wish that I could better show the Court

18  how much I've grown over the past three years or so since I

19  was arrested and the progress I've made as a person in

20  maturing.  I mean, I feel like that I've learned a lot about

21  my flaws and how I can better myself.

22      Being incarcerated is a great place for, you know,

23  self-reflection and really just a time to focus on bettering

24  yourself.  I feel like the flaws I've learned about myself are

25  things that I've worked on fixing.  I mean, just so many -- so

1   many different things that I've gotten better at.  I mean, the

2   whole time I've been incarcerated, I've regularly exercised

3   and just worked on bettering my own health as much as I can.

4   And I've tried to be more social with people, which might be a

5   result of Asperger's.  And I feel like I've come a long ways

6   in trying to be more relatable.

7          You know, I think this conduct is something that

8   there's no chance that I could ever do again.  I have no

9   interest in drugs.  I've never sold drugs or used drugs.  But

10  I'm charged with a drug crime, which I understand, and I

11  accept responsibility for.  But I mean, prior to coming to

12  jail, I never even saw most of these drugs.  It's not an

13  environment that I was raised in.  And it's not something that

14  I'll ever do again or have any interest in.

15         I think going forward I just want to focus on

16  productive and positive stuff and be in the best environment

17  that I can be in, which is, I think there's a prison camp in

18  Yankton, South Dakota that offers HVAC programming, which is a

19  36-month program.  And I feel like if I get into something

20  like that, I'll at least be able to support myself once I'm

21  released and have a foundation going forward.

22         Even though I feel like over the past few years I've

23  built a foundation for success, just there's no way that I

24  could ever do something like this again.  If anything at all,

25  I just -- it's not -- it's not something that I ever -- I

1    don't have any interest in this type of activity.

2          And I know that the stuff I did was bad and I think

3    part of that is -- I was just immature and thought I was, you

4    know, probably invincible online.  And that's not necessarily

5    the person that I am.  But -- and that's definitely not the

6    person I'm going to be in the future.  I can promise you that.

7    So that's all that I have to say.

8          THE COURT:  All right.

9          PROBATION OFFICER:  Your Honor, Natalie Valdivia with

10   US Probation.  I just wanted to note that according to a

11   United States Sentencing Commission representative, the

12   guideline is calculated first and then a motion is applied and

13   then if there's a variance, then that's applied after the

14   fact.

15         THE COURT:  Right.  I made the guideline

16   determination of an offense level 37, criminal history

17   category III resulting in a guideline range of 240 months.

18         PROBATION OFFICER:  Okay.  Thank you.

19         THE COURT:  And then I'm granting the motion, the

20   government's motion pursuant to 5K and I'm going to apply some

21   variance.  And let me say, the government may take the

22   position, look, we took that into account as well.  And I

23   understand it.  But before Mr. Herrell was ordered released,

24   he had served 31 months in local custody.  And those of you

25   who appear in front of me regularly for sentencing, before

1     COVID-19, which Mr. Herrell at least was in local custody

2     during the beginning of, which is what precipitated his motion

3     for release.  And I know that he voluntarily remained in

4     custody.  And that's been addressed in some of the filings

5     with the Court.

6           Nonetheless, 31 months in local custody is very, very

7     difficult.  Much harder time, in my view, than being in a BOP

8     facility.  And I'm sure the government believes that it's

9     taken that into account as well, but that's pretty much as

10     long of a stretch in local custody as I've ever seen.  It's

11     definitely very close to it.  And I think some variance, based

12     upon the combination of the defendant's age, my strong

13     suspicion that there is some other condition at play.  But

14     especially and most importantly, the hard time nature of 31

15     months in local custody does, in my view, justify some slight

16     downward variance.

17           Therefore, based upon the granting of the motion

18     under 5K and some very, in my view, moderate downward

19     variance, for the factors I've cited, pursuant to the

20     Sentencing Reform Act of 1984, it is the judgment of the Court

21     that the defendant Bryan Connor Herrell is hereby committed to

22     the custody of the Bureau of Prisons to be imprisoned for a

23     term of 132 months.

24           The defendant shall pay a special assessment of $100,

25     payment to begin immediately.  The Court finds that the

1  defendant does not have the ability to pay a fine and

2  imposition of a fine is therefore waived.

3          The preliminary order of forfeiture filed March 6th,

4  2020 is hereby made final as to this defendant and shall be

5  incorporated into the judgment.

6          Upon release from imprisonment, the defendant shall

7  be placed on supervised release for a term of 36 months.

8  Within 72 hours of release from the custody of the Bureau of

9  Prisons, he shall report in person to the probation office in

10 the district to which he is released.

11         While on supervised release, he shall not commit

12 another federal, state or local crime and shall not illegally

13 possess controlled substances.  He shall cooperate in the

14 collection of a DNA sample as directed by his probation

15 officer and shall comply with the standard conditions which

16 have been recommended by the US Sentencing Commission and

17 adopted by this Court.

18         The mandatory drug testing condition is suspended

19 based upon the Court's determination that the defendant poses

20 a low risk of future substance abuse.

21         The special conditions recommended by the probation

22 officer on page 21 of the presentence report will be adopted

23 and the Court imposes all of those listed as special

24 conditions.

25         The Court will recommend to the Bureau of Prisons

1   that Mr. Herrell be designated to serve the remainder of his

2   sentence at the institution located at FPC Yankton in

3   order -- in light of training opportunities that are present

4   there.  A secondary recommendation, if Yankton is not

5   determined to be appropriate, would be FCI Texarkana for the

6   same reason.  Those recommendations are based solely -- or are

7   made only to the extent consistent with security

8   classification and space availability.

9            And is there any objection to the defendant's

10  request, under the circumstances, of a voluntary surrender

11  into custody?

12           MR. HEMESATH:  No, Your Honor.  No objection.

13           THE COURT:  And typically, Jami, what date -- how far

14  out would we be setting that?

15           THE CLERK:  Usually it's eight weeks on a Wednesday.

16           THE COURT:  And that would take us to?

17           THE CLERK:  That would be -- hold on one second,

18  judge.  Sorry.  That would take us to November 4th.

19           THE COURT:  Is that acceptable?

20           THE CLERK:  At two p.m.  Sorry.

21           THE COURT:  Is that date agreeable, Mr.

22  Hammerschmidt?

23           MR. HAMMERSCHMIDT:  Yes, Your Honor.

24           THE COURT:  So, Mr. Herrell, I'll direct that you

25  surrender into the custody of the US Bureau of Prisons by

1    November 4th at two p.m. to the designated institution or if

2    no such institution has been designated, to the US Marshals in

3    Denver, Colorado.  And I will also advise you that all the

4    same terms of your release continue to govern until you

5    surrender into custody.

6            Moreover, any failure on your part to surrender on

7    the date and by the time I've ordered would be a separate

8    felony offense and would -- if you are prosecuted for failing

9    to appear pursuant to an order of the Court to surrender and

10   convicted of that failure to appear, the failure to appear

11   itself would be punishable by up to ten years in prison, a

12   fine of up to $250,000 or both.  And any penalty for that

13   failure to appear would have to be imposed consecutive to the

14   sentence that I've just imposed.

15           So it's obviously very important you stay in full

16   compliance with the conditions I've set on your release and

17   that you surrender on the date -- on or before the date and

18   time that I've ordered.

19           Do you understand and will you do that?

20           THE DEFENDANT:  Yes, I understand, Your Honor.  And I

21   will do that.

22           THE COURT:  Now, Mr. Herrell, I will -- I note that

23   as part of your plea agreement, you've waived any right to

24   appeal as well as to collaterally attack any part of your plea

25   and sentence in this case.  Nonetheless, I will advise you

1   that if you wish to appeal from the sentence that's just been

2   imposed, you must file a written notice of appeal with the

3   Court within 14 days of today's date.  If you cannot afford an

4   attorney in connection with that appeal, the Court would

5   appoint one for you.

6           There are no remaining counts to dismiss.

7           Mr. Herrell, my only other comment to you would be

8   both because of your actions most recently following the

9   offense, the government's motion and a slight downward

10  variance, in my view you've been granted a considerable break.

11  I know it may not feel that way to you or your family, but you

12  have been.  You could have sentenced to a much longer period

13  of incarceration based on the seriousness of this offense.

14          You're going to be on supervised release when you're

15  done serving your sentence.  Given the seriousness of the

16  underlying case, if you were to violate the terms of your

17  supervised release, you could be returned to prison for the

18  term of the supervised release.  And if I had to hazard a

19  guess, given the seriousness of the underlying conduct, I'd

20  doubt very much that there would be a lot of breaks given at

21  that time.

22          So you've told me that you've got no interest in

23  doing anything other than leading a law abiding and productive

24  life.  I hope that's very much true.  If it's not, the

25  consequences could be very serious.  Could luck, sir.

1          THE DEFENDANT:  There's just one more thing I could

2    add.

3          THE COURT:  Go ahead.

4          THE DEFENDANT:  Is there like a way to limit

5    the -- like the media release from this, just because, I mean,

6    the attention on it has affected my family so much.  I mean,

7    they've had their identity stolen and it's just been a

8    nightmare.

9          THE COURT:  Courts are public.

10          MR. HAMMERSCHMIDT:  Your Honor, my only other request

11    would be to have the medical records from the jail transferred

12    to the prison due to some issues that arose with Mr. Herrell.

13    And they've also requested a copy for themselves, for Mr.

14    Herrell.  I'm not sure if that can be done.

15          THE COURT:  I will direct the Marshals Office to

16    request that the jail forward Mr. Herrell's medical records to

17    the Bureau of Prisons.  I would expect that that would be done

18    as a matter of course.  But I'd ask the Marshals to inquire

19    and make sure that it occurs in this case.

20          With respect to whether Mr. Herrell can obtain a copy

21    of his jail medical records, I believe he can.  I certainly

22    have no objection to him receiving those.  I'm not sure that

23    it's something I need to or even can order.  If you have

24    trouble obtaining them and you think there's a way that I play

25    a role in that, you can certainly file a request, Mr.

22

1   Hammerschmidt.  I have no objection to him having his medical

2   records.  It would seem to me that he'd be entitled to them.

3        MR. HAMMERSCHMIDT:  Thank you, Your Honor.

4        THE COURT:  Anything further?

5        MR. HEMESATH:  One additional thing, Your Honor.

6        THE COURT:  Yes.

7        MR. HEMESATH:  If the Court would order that the

8   preliminary order of forfeiture filed March 6th, 2020 be made

9   final.

10       THE CLERK:  You already did, judge.

11       MR. HEMESATH:  Oh, you did?  Okay.  I'm sorry.  I

12  missed it.

13       THE COURT:  Yes.  And I repeat that, that that

14  preliminary order of forfeiture of March 6, 2020 is made final

15  and shall be incorporated into the judgment.

16       MR. HEMESATH:  Okay.  Thank you.

17       THE COURT:  Thank you.  It was on my list.  Hopefully

18  I didn't skip it the first time.

19       MR. HEMESATH:  That might have been my fault, Your

20  Honor.

21       THE COURT:  Okay.  Anything else?

22       MR. HAMMERSCHMIDT:  Nothing else.  Thank you.

23       MR. HEMESATH:  Thank you, Your Honor.

24       THE COURT:  Thank you.  Court's in recess.

25     (The proceedings were concluded at 10:11 a.m.)

1

2         I, KAREN HOOVEN, Official Reporter, do hereby certify

3    that the foregoing transcript as true and correct.

4

5    DATED:  15th of January, 2021      /s/  Karen Hooven
                                        KAREN HOOVEN, RMR-CRR
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25